IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

RITA MURCHISON,
JOSHUA MURCHISON, and
BRANDY CRAWFORD,

      Plaintiffs,

v.                                No. 1:19-cv-01028-JDB-jay

RELIANCE STANDARD LIFE
INSURANCE COMPANY,

      Defendant.

_____

ORDER GRANTING PLAINTIFFS' MOTION FOR JUDGMENT ON THE RECORD,
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT/JUDGMENT ON THE
ADMINISTRATIVE RECORD, AND REFERRING MATTER TO THE MAGISTRATE
JUDGE FOR REPORT AND RECOMMENDATION ON ISSUE OF PROPER AMOUNT OF
AWARD, INTEREST, AND ATTORNEY'S FEES AND COSTS

_____

*INTRODUCTION*

This matter was initiated by the Plaintiffs, Rita Murchison, Joshua Murchison, and Brandy Crawford (collectively, "Murchison"), on February 12, 2019, against the Defendant, Reliance Standard Life Insurance Company ("Reliance"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), § 502(a)(1)(B), codified at 29 U.S.C. § 1132(a)(1)(B), arising from Defendant's denial of benefits. (Docket Entry ("D.E.") 1.) Before the Court is the Plaintiffs' motion for judgment on the record (D.E. 23), to which Defendant has responded (D.E. 25), and Murchison has replied (D.E. 27). Also pending is the motion of Reliance for summary judgment/judgment on the administrative record (D.E. 24), to which the Plaintiffs have responded (D.E. 26), and the Defendant has replied (D.E. 28). Accordingly, these cross-motions are ripe for disposition.

1

*BACKGROUND*

The Policy.

Rickie Wade Murchison was, at the time of his death, employed by Toyota Boshoku America, Inc. as a quality assurance engineer. (Administrative Record ("AR") 0169.) As a benefit of that employment, he elected, according to the complaint, a total of $597,000 in accidental death and dismemberment ("AD&D") insurance coverage under policies issued by Reliance, numbered GL 151736 and VAR 205886 (collectively, the "Policy"). (D.E. 1 at PageID 2-3; AR 0001-28, 185-86, 321-45.) The Policy contained an exclusion for losses "to which sickness, disease, or myocardial infarction, including medical or surgical treatment thereof, is a contributing factor; or . . . to which the Insured's acute or chronic alcoholic intoxication is a contributing factor; or . . . to which the Insured's voluntary consumption of an illegal or controlled substance or a non-prescribed narcotic or drug is a contributing factor" (collectively, the "Exclusion"). (AR 0021, 345.) Mr. Murchison's wife Rita and his children, Joshua Murchison and Crawford, were designated as beneficiaries. (AR 0187-88.)

Record Evidence.

Mr. Murchison died on September 11, 2017, at the age of sixty-three. (AR 0199.) The Gibson County, Tennessee, sheriff's department issued the following report on the circumstances surrounding his death:

> [On September 10, 2017,] the deceased had been riding with friends on ATV[]s and also been target practicing and drinking[. I]t was determined . . . the deceased accidently shot one of his friends in the arm [and] the friend left [the] area to seek medical attention. The deceased did stay behind to continue to ride. It's also unclear why the deceased didn't go with his friend to seek medical attention but did continue to stay behind and ride. Tracks from the deceased['s ATV] show[] him going on a dirt trail behind a dirt mound and continuing on a creek bank where it's believed . . . that he lost control of the [ATV] and having said [ATV] to roll over down a creek bank[, t]hrowing or rolling the deceased into a fork of a small tree and possibly having the [ATV] on top of him. This would explain the [medical

2

> examiner's] findings for [e]vidence of injury. . . .  Also, the abrasion would be consistent with an [ATV] roll over in heavy brush.  Based on the [t]oxicology report his [Blood Alcohol Concentration ("BAC")] levels [were] high so therefore his reaction level would have been slowed combined with medication.

(AR 0130.)[1]  After Mr. Murchison left the scene and failed to return home that evening, police and family members searched for him throughout the night.  (AR 0233.)  His body was located by Joshua Murchison the next morning in a soybean field.  (AR 0202, 0233.)  There were no witnesses to the accident.

The sheriff's report ruled the death accidental.  (AR 130.)  An autopsy performed on September 13, 2017, by the medical examiner's office in Memphis, Tennessee, revealed blunt force injuries to the head, neck, and extremities, including fractures of the C1 vertebra, the right calcaneus, and the right proximal fibula.  (AR 0203-09.)  The medical examiner's report indicated multiple abrasions and contusions, scalp and neck hemorrhage, moderate atherosclerotic cardiovascular disease, and severe hepatic steatosis with early changes of cirrhosis.  (*Id.*)  Cause of death was listed as "blunt force injury of the neck" and the manner of death as accidental.  (AR 0209.)  The same cause and manner of death appeared on a death certificate issued by the State of Tennessee Office of Vital Records dated May 25, 2018.  (AR 0199.)  A toxicology report prepared by NMS Labs, Willow Grove, Pennsylvania, on September 26, 2017, reflected a BAC of 0.144 g/100 mL, Vitreous Ethanol of 181 mg/dL., Hydrocodone - Free - of 63 ng/mL., and Dihydrocodeine/Hydrocodol - Free - of 11 ng/mL.  (AR 0210-13.)

The Plaintiffs filed a claim for benefits under the Policy on or about November 1, 2017.  (AR 0169-70.)  A claim file note dated August 20, 2018, stated that, based on the sheriff's report,

---

[1]The sheriff's report does not appear in the record as a stand-alone document.  It is unclear whether this quote, which is contained in correspondence issued by Reliance to the Plaintiffs on August 29, 2018, and reflects a date of July 12, 2018, constitutes the entirety of the report.  The record contains no explanation for the omission of such a critical document.

"it appeared that [the] insured was trying to travel down a ditch embankment when he lost control of the four wheeler and rolled down the embankment, causing his head to wedge between two stumps." (AR 0101.)  At the end of the notation appeared the following recommendation:

> Denial Recommended based on the [Exclusion], not sure if the drugs in the toxicology report were prescribed, therefore we will apply the above exclusions. With the reported BAC level of alcohol 0.144 g/100, exclusion [where "the Insured's acute or chronic alcoholic intoxication is a contributing factor"] applies. With this reported level of alcohol produces the following physical and mental impairments:  Reaction time, gross motor control, staggering and slurred speech. Legal limit in Tennessee is 0.08%.

(*Id.*)  It is unclear to the Court who wrote this entry.

On August 29, 2018, Reliance claims reviewer Jane M. Hopson issued a letter to the Plaintiffs advising them that the AD&D claim had been denied pursuant to the Exclusion.  (AR 0128-31.)  The correspondence, citing the death certificate, the medical examiner's report, the toxicology report, and the sheriff's report, stated in pertinent part:

> According to a study of the Progressive Effects of Alcohol conducted by [Virginia Polytechnic Institute and State University ("Virginia Tech")], a person with a blood alcohol concentration of 11g% to 20g% exhibits the following physical impairments:  Reaction Time, Gross Motor Control, Staggering and Slurred Speech.[2]

> Mrs. Mur[c]hison you confirmed during our telephone conversation on August 20th that Mr. Murchison was taking hydrocodone for two hip replacements and Dr. Hayden was the treating physician.

> As a result of our review, we have determined that even though Mr. Murchison's death on September 11, 2017 was ruled as an "Accident" we have determined that Mr. Murchison's death was contributed to the acute alcoholic intoxication which is an exclusion under the [AD&D policies].  In addition, the medication (hydrocodone) Mr. Murchison was taking for the treatment of his hip replacements also contributed to the accident.  As indicated in the investigative report the high level of blood alcohol . . . and medication played a role in his reaction level, therefore contributed to the accident and his subsequent death on September 11, 2017.

---

[2]A copy of the study is not included in the record.

(AR 0129-30.)

A claim file note dated October 1, 2018, written by I. Bergstrom, RN, BSN, CCM, as part of an "AD&D Appeal Review," stated in part that "[w]ith a blood alcohol level above 0.010 claimant would have impaired judgment, coordination, confusion. Therapeutic level of Hydrocodone is 0.01-0.05 ug/mL, claimant's was 0.63[]ug/mL resulting in further impairment. Elevated levels of Blood Alcohol and hydrocodone in blood were contributing factors in claimant's death."[3] (AR 0060.) Another note from the claim file bearing the same date stated: "Accidental Death and Dismemberment Policy exclusion: A benefit will not be payable for a loss to which the Insured's acute or chronic alcoholic intoxication is a contributing factor. Even though [claimant's] death on 9/11/17 was ruled an "Accident," it was determined that acute alcoholic intoxication contributed to his death, which is excluded under the policy." (AR 0074.)

In a letter dated October 26, 2018, Senior Benefits Analyst, Appeals, Jacqueline S. Haubrich advised Plaintiffs' counsel, Michael J. Hoover, that "[w]ith a blood alcohol level above 0.010, Mr. Murchison would have had impaired judgment, coordination, and confusion. In addition, the therapeutic level of Hydrocodone is 0.01-0.05[]ug/mL. Mr. Murchison's level of 0.63[]ug/mL would result in further impairment." (AR 0142-46.) In making this statement, the benefits analyst made no citation to the case file or authority. She continued: "As Mr. Murchison's

---

[3]The Plaintiffs attempt to assign nefarious motives to this file note. As the appeal had not yet been filed at that point, Murchison claims the note evidences predetermination of the appeal. In response, the Defendant explains that, when Plaintiffs' appeal of Reliance's denial of additional benefits under a life insurance policy, which is not at issue in this case, was filed, the employee assigned to that appeal mistakenly forwarded both the life and AD&D decisions to the nurse for an appeals review. As the Court concludes herein that the denial of benefits was arbitrary and capricious for other reasons, it need not delve into this issue.

elevated blood alcohol and Hydrocodone levels were contributing factors in his death, the denial of the Accidental Death Benefits must be upheld." (*Id.*)

On October 30, 2018, Hoover appealed the denial of Murchison's AD&D claim. (AR 0231-32.) Attached to the appeal letter was a document entitled "Report of Investigation Narrative Summary" authored by Gibson County Deputy Coroner Tim Taylor. (AR 0233-34.). Taylor related therein that

> [he was] [d]ispatched to Kevin Cox [Road in] Humboldt, [Tennessee] to investigate the death of a 63 year old white male. [He a]rrive[d] on scene in a field approximately about one mile down a field road, found the decedent down a creek bank with his head and neck wedge[d] between a stump and a small tree. The decedent was pronounced decease[d] by Dep[uty] Coroner Tim Taylor at 10:50 09/11/2017.
>
> *            *            *
>
> During my investigation I spoke with Detective DeWayne Reynolds, he stated the decedent was involve[d] in [an] accidental shooting on 09/10/2017 around 18:30 hours. The decedent disappeared and the local authorities had been searching for him all night. The decedent['s] son (Josh Murchison[)] got out around 05:00 hours this date looking for the decedent since he did not come [illegible].
>
> During my examination of the decedent remains it appeared he had been decease[d] for several hours. It appears the decedent ran his four wheeler off the creek bank. The four wheeler flip[ped] over on top of the decedent wedging the decedent['s] head [and] neck between a stump and a small tree. It appeared the decedent had a possible fracture of the cervical spine and a possible skull fracture.
>
> The decedent died of multiple trauma. The manner of death is accidental.

(*Id.*) Also attached was an email chain between Plaintiffs' counsel and Reynolds, dated October 2018, in which Hoover posed the following question: "Based on your investigation and all of the evidence you have seen, can you please confirm whether it is possible to determine whether alcohol and medication played a role in Mr. Murchison's ATV accident?" (AR 0235.) Reynolds answered thusly:

> . . . the answer would be No, I can not confirm that alcohol or medication played a role into Mr. Murchison['s] ATV accident.  And I can['] confirm that sp[e]ed was an issue either.  The evidence showed a[n] ATV roll over on a side creek bed from a sink hole or dip on the bank.  My final case log entry was very clear that he lost control throwing him off the ATV into a fork of a tree.  Based on the toxicology performed by the [medical examiner's] office his BAC level with combined medication would cause a person['s] reaction time to be slower than someone who don't drink.

(*Id.*)  Finally, counsel appended the declaration of Crawford, in which she stated that, while her father was skilled at driving ATVs, both drunk and sober, he had recently purchased the 2007 Honda Rubicon 500 involved in his death from a neighbor and had only ridden it a few times prior to the accident.  (AR 0236-37.)  The vehicle, she explained, had a complicated gear shift option with which Mr. Murchison had no experience.  (*Id.*)  Crawford further related that she had ridden ATVs with her father since she was a small child over all manner of terrain and that he, while not a thrill seeker, enjoyed hilly, off-the-beaten-path areas, "especially those that also had a creek or river to explore."  (*Id.*)  When she visited the crash site, it was her impression that it would have been almost impossible to cross the creek bed at that point without a rollover.  (*Id.*)  Senior Benefits Analyst, Appeals, Lauren Brantz acknowledged receipt of counsel's letter on November 13, 2018, and advised that a determination on the appeal would require that Reliance contract for review of the claim file by an independent physician.  (AR 0148-49.)

Pursuant to a referral by Brantz, independent physician Evan W. Matshes, M.D., board certified in anatomic pathology and with a subspecialty in forensic pathology, submitted a peer review report to Reliance on November 20, 2018.  (AR 0268-70.)  The salient portions of his report are as follows:

REVIEW QUESTION(S):

1.     Please review the medical records and provide an opinion regarding whether the claimant's death (the loss) can be classified as a loss to which sickness,

disease, or myocardial infarction, including medical or surgical treatment thereof, is a contributing factor.

No.

Mr. Murchison died of blunt neck trauma.

2.      Please review the medical records and provide an opinion regarding whether the claimant's death (the loss) can be classified as a loss to which the insured's acute or chronic alcoholic intoxication is a contributing factor.

No.

Mr. Murchison died of blunt neck trauma.

The consumption of alcohol may have been a risk factor for the circumstances that lead to dea[th].  However, it is impossible (and scientifically irresponsible) to make this assertion from metric lab data alone.  For example, the role of chronic alcohol use and alcohol abuse in the development of alcohol tolerance is a significant factor that must be considered.

Regardless of the quantity of alcohol detected in the postmortem blood, that alcohol did not play any role in the process of dying.  In a way, from a forensic pathology perspective, it did not contribute to death.

3.      Please review the medical records and provide an opinion regarding whether the claimant's death (the loss) can be classified as a loss to which the insured's voluntary consumption of an illegal or controlled substance or a non-prescribed narcotic or drug is a contribution factor.

No.

Mr. Murchison died of blunt neck trauma.

Based on the limited information provided to me during this review, I cannot make any comment about whether or not Mr. Murchison was prescribed narcotics, and if so, for what.

(AR 0269-70.)  After receiving the report, Brantz requested that an additional question be posed

to Dr. Matshes:  "Is it reasonable to conclude that Mr. Murchison's voluntary consumption of

Ethanol, Dihydrocodeine and/or Hydrocodone OR his alcohol intoxication (chronic or acute) was

a contributing factor to the accident which resulted in his death?" (AR 0271.) In an addendum to

his initial report pursuant to her request, dated November 27, 2018, Dr. Matshes responded:

> From a forensic medicine perspective, the voluntary consumption of alcohol or
> drugs did not contribute to the process of dying. However, the voluntary
> consumption of alcohol and sedating drugs may have been a risk factor for the
> circumstances that lead to the accident. However, to be able to opine upon that
> proposition, much more information is required as the "metric" (numerical)
> toxicology data cannot be used in isolation to offer opinions about intoxication.
>
> For example, I would need information about habituation of alcohol and narcotic
> drug use, whether or not the decedent had recently eaten (and if so what) etc.

(AR 0277-78.)

On November 28, 2018, Brantz forwarded Dr. Matshes' report to Hoover requesting any

additional information or rebuttal be submitted by December 12, 2018. (AR 0150.) Counsel

responded the following day, advising the insurer that, "[a]fter reviewing Dr. Matshes'

conclusions, we do not believe the submission of any additional medical records will be

necessary." (AR 0279.)

In correspondence dated February 8, 2019, Brantz advised Hoover that the claim appeal

had been denied. (AR 0151-57.) She wrote:

> We acknowledge that the Death Certificate states Mr. Murchison died of "Blunt
> Force Injury of the Neck" and the manner of death was "Accident." However, the
> overwhelming evidence of this claim leads us to conclude that alcohol and
> controlled substances (illegal or prescribed) played a contributing factor in the ATV
> accident that led to Mr. Murchison's death. The toxicology results revealed that
> Mr. Murchison's blood alcohol level was .144[]g/100[]mL and his Hydrocodone
> level was 0.63[]ug/mL. With a blood alcohol level above 0.010, Mr. Murchison
> would have had impaired judgment, coordination, and confusion. In addition, the
> therapeutic level of Hydrocodone is 0.01-0.05[]ug/mL. Mr. Murchison's level of
> 0.63[]ug/mL would result in further impairment. Furthermore, Detective Reynolds
> also stated, in part: "[b]ased on the toxicology performed by the [medical
> examiner's] office his BAC level with combined medication would cause a
> person['s] reaction time to be slower than someone who don't drink." Finally, Dr.
> Matshes states in the Amended Peer Review: "the voluntary consumption of
> alcohol and sedating drugs may have been a risk factor for the circumstances that
> lead to the accident."

9

In Summary, after reviewing the totality of the available information, including investigator's notes, and bolstered by the independent opinion of Dr. Matshes, we have determined that both (acute or chronic) alcohol intoxication as well as voluntary consumption of an illegal or controlled substance were contributing factor(s) in the accident that ultimately ended Mr. Murchison's life on September 11, 2017. Therefore, Accidental Death benefits for the loss of Mr. Murchison's life are specifically excluded under the GL and VAR Policies. Accordingly, the original decision to [sic] Accidental Death Benefits was appropriate and must be upheld.

(AR 0156.) As was the case with the October 26, 2018, letter, there was no citation to the record or any authority in support of Brantz's statements concerning the effects of a BAC over 0.010. Nor was there citation to any authority or portion of the record with respect to the therapeutic level of Hydrocodone or the effects of dosages above that threshold.

This action, seeking an award of benefits under the Policy in the combined amount of $597,000, as well as profits Defendant may have realized by the wrongful retention of such benefits, prejudgment and post-judgment interest, and attorney's fees and costs, ensued.

*STANDARD OF REVIEW*

The Defendant has moved for relief by way of summary judgment or, alternatively, judgment on the administrative record. As the Sixth Circuit explained in *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609 (6th Cir. 1998), the traditional summary judgment standard under Rule 56 of the Federal Rules of Civil Procedure is inconsistent with ERISA cases, as "the district court is limited to the evidence before the plan administrator at the time of its decision (i.e., the administrative record)." *Canada v. Am. Airlines, Inc. Pilot Ret. Benefit Program*, 572 F. App'x 309, 313 (6th Cir. 2014) (citing *Wilkins*, 150 F.3d at 617-19 (Gilman, J., concurring)). Thus, the Court will analyze Reliance's motion as one for judgment on the administrative record. *See Reid v. Int'l Painters & Allied Trades Indus. Pension Plan*, 358 F. Supp. 3d 714, 722 (S.D. Ohio 2019) (noting that, as summary judgment not appropriate method of determining ERISA denial of

benefits claim, citing *Wilkins*, motion for summary judgment would be adjudicated as a motion for judgment on the administrative record), *appeal dismissed*, 2019 WL 4155048 (6th Cir. May 28, 2019).

Generally speaking, "a plan administrator's denial-of-benefits decision is reviewed de novo." *Clemons v. Norton Healthcare Inc. Ret. Plan,* 890 F.3d 254, 264 (6th Cir. 2018) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)), *reh'g en banc denied* (June 18, 2018).  However, "if the plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, [the court is to] review such decisions under the arbitrary-and-capricious standard." *Id.* (quoting *Firestone*, 489 U.S. at 111, 115) (internal quotation marks omitted).  The standard is also applied to factual determinations made by the plan administrator. *Id.* (citing *Shaw v. AT&T Umbrella Benefit Plan No. 1*, 795 F.3d 538, 547 (6th Cir. 2015)).  Under either the de novo or the arbitrary and capricious standard, "generally a court may consider only the evidence available to the administrator at the time the final decision was made." *Shaw*, 795 F.3d at 547 (citing *McClain v. Eaton Corp. Disability Plan*, 740 F.3d 1059, 1064 (6th Cir. 2014)).

The parties are at odds as to which standard applies, with Reliance favoring the more deferential arbitrary and capricious standard and Murchison arguing for de novo review.  Because it finds that Reliance's denial of benefits fails to pass muster under the less demanding arbitrary and capricious standard, the Court need not consider whether it survives the more rigorous de novo analysis. *See Gillespie v. Liberty Life Assurance Co. of Boston*, 567 F. App'x 350, 353 (6th Cir. 2014) (court found that it need not reach the parties' dispute as to which standard of review applied, as the plan administrator's determination failed under either).

*ANALYSIS*

ERISA § 502(a)(1)(B) authorizes plan participants or beneficiaries to bring an action "to recover benefits due to [them] under the terms of [the] plan, to enforce [their] rights under the terms of the plan, or to clarify [their] rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B); *Mulder v. Local 705, Int'l Bhd. of Teamsters, Pension Fund*, 794 F. App'x 451, 454 (6th Cir. 2019).  "Congress intended ERISA plans to be uniform in their interpretation and simple in their application."  *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, at *7 (6th Cir. 2020) (quoting *Shelby Cty. Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 934 (6th Cir. 2000)) (internal quotation marks omitted).  Therefore, "in interpreting the provisions of a plan, a plan administrator must adhere to the plain meaning of its language, as it would be construed by an ordinary person."  *Id.* (quoting *Shelby Cty. Health Care Corp.*, 203 F.3d at 934) (brackets omitted).  Where an insurer relies on a plan exclusion as a basis for a denial of benefits, the burden lies with the insurer to prove the exclusion applies.  *Kallaus v. Nationwide Death Benefit Plan*, No. 2:09-CV-0899, 2012 WL 5411082, at *10 (S.D. Ohio Nov. 6, 2012).  This burden extends to the question of causation; that is, the insurer "must demonstrate by a preponderance of the evidence not only that a condition enumerated within one of its exclusions existed, but that the condition" contributed to the death.  *Id.*

Under the arbitrary and capricious standard, the administrator's decision must be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence."  *Corey v. Sedgwick Claims Mgmt. Servs., Inc.*, 858 F.3d 1024, 1027 (6th Cir. 2017).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Jolliff v. N.L.R.B.*, 513 F.3d 600, 607 (6th Cir. 2008) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

While the arbitrary and capricious standard is "extremely deferential" and the "least demanding form of judicial review," "it is not *no* review." *McDonald v. W.-S. Life Ins. Co.*, 347 F.3d 161, 172-73 (6th Cir. 2003). "A decision regarding eligibility for benefits is not arbitrary and capricious if the decision is rational in light of the plan's provisions." *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313 F.3d 356, 361 (6th Cir. 2002) (quoting *Daniel v. Eaton Corp.*, 839 F.2d 263, 267 (6th Cir. 1988)) (internal quotation marks omitted). "Stated differently, when it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* (quoting *Davis v. Kentucky Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)) (brackets and internal quotation marks omitted).

To satisfy the arbitrary and capricious standard, "plan administrators may not arbitrarily refuse to credit a claimant's reliable evidence[.]" *Evans v. UnumProvident Corp.*, 434 F.3d 866, 877 (6th Cir. 2006) (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)) (brackets and ellipses omitted). Nor can they conduct what amounts to "a selective review of the administrative record." *Moon v. Unum Provident Corp.*, 405 F.3d 373, 381 (6th Cir. 2005); *see also Spangler*, 313 F.3d at 362 (plan administrator's decision was arbitrary and capricious where court could only conclude that it had "cherry-picked" the file in search of an outcome in its favor).

"[I]f a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Clemons*, 890 F.3d at 264 (quoting *Firestone*, 489 U.S. at 115). "A conflict of interest exists for ERISA purposes when the plan administrator both evaluates claims -- i.e., determines which claims are covered under the benefits plan -- and pays those claims." *Calhoun v. Life Ins. Co. of N. Am.*, 665 F. App'x 485, 492 (6th Cir. 2016) (citing *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 114 (2008); *DeLisle v. Sun Life Assurance Co. of Canada*, 558 F.3d 440,

13

445 (6th Cir. 2009)).  Because Reliance maintains this dual role, the "potential for self-interested decision-making is evident."  *See Neaton v. Hartford Life & Accident Ins. Co.*, 517 F. App'x 475, 481 n.11 (6th Cir. 2013) (quoting *Univ. Hosps. of Cleveland v. Emerson Elec. Co.*, 202 F.3d 839, 846 n.4 (6th Cir. 2000)).  The conflict may "act as a tiebreaker when the other factors are closely balanced," or "may prove more important when circumstances suggest a higher likelihood that it affected the benefits decision."  *Calhoun*, 665 F. App'x at 492 (quoting *Glenn*, 554 U.S. at 117) (ellipses and internal quotation marks omitted).  Circumstances falling into the latter category may include "cases where an insurance company administrator has a history of biased claims administration."  *Glenn*, 554 U.S. at 117.

Murchison argues that the Court must treat Reliance's conflict of interest as particularly significant in light of an extensive history of arbitrary and capricious claims determinations, citing numerous cases.  By way of response, Reliance cites to a nearly equal number found to not be arbitrary and capricious.  Taking into account Defendant's inherent conflict, as well as what the Court finds to be a blatant disregard on Reliance's part for any information, including its own expert's opinion, favorable to the claimant, the Court is justified in giving more weight to the conflict.  *See Glenn*, 554 U.S. at 118 (insurer's inherent conflict, along with its seemingly inconsistent positions that were both financially advantageous, justified court in giving more weight to the conflict of interest).

With the foregoing principles in mind, the Court will consider the merits of the parties' claims.

Reliance's reason for denying Plaintiffs' claim rested solely on the Exclusion.  Such exclusions come in two flavors.  The first is an "absolute bar to recovery if death or injury occurs while legally intoxicated regardless of causation."  *James-Smith v. Total Affiliates Accidental*

*Death & Dismemberment Ins. Plan*, No. 3:10 CV 2640, 2011 WL 4899992, at *6 (N.D. Ohio Oct. 13, 2011).  Under this category, "the court's analysis begins and ends with whether the covered person was intoxicated at the time of death."  *Id.* (citing *Chmiel v. JC Penney Life Ins. Co.*, 158 F.3d 966 (7th Cir. 1998)).  The second requires a showing of causation.  *Id.* (citing *Loan v. Prudential Ins. Co. of Am.*, 370 F. App'x 592, 596 (6th Cir. 2010)).  This type of exclusion requires the insurance provider "to establish the causal link between the intoxication and the injury."  *Id.*

The Exclusion at issue here clearly falls into the second classification.  *See Cerone v. Reliance Standard Life Ins. Co.*, No. 13cv184-MMA-DHB, 2014 WL 10706760, at *1-2, 11 (S.D. Cal. Aug. 8, 2014) (Reliance policy with identical exclusion required showing of causation).  Indeed, the Defendant does not assert otherwise.

The Plaintiffs do not dispute that Mr. Murchison had drugs and/or alcohol in his system.  Because the Exclusion contains a causation element, mere reference to the fact that he had been drinking and/or taking medication is insufficient to invoke the Exclusion.  *See James-Smith*, 2011 WL 4899992, at *6 (mere reference to insured's intoxication was not, under the second category, enough to establish the required causal link).  Instead, "there must be some evidence of the role of alcohol [or medication] in the loss, beyond the insured's intoxicated state, to establish the applicability of the exclusion."  *Horton v. Life Ins. of N. Am.*, Civil Action No. ELH-14-3, 2015 WL 1469196, at *18 (D. Md. Mar. 30, 2015).

In support of its position that causation was present, Defendant relies on three cases, all of which the Court finds distinguishable.  In *Nichols v. Hartford Life & Accident Insurance*, Civil Action No. 4:13-cv-03048, 2014 WL 12537147 (S.D. Tex. June 9, 2014), the decedent was insured under an AD&D policy that excluded "loss caused or contributed to by . . . [i]njury sustained while intoxicated."  *Nichols*, 2014 WL 12537147, at *1.  Subsequent to the policy's issuance, he died

15

after the ATV he was driving left the road, fell into a ditch, and struck a tree. *Id.* According to the police report, the insured had been drinking and was traveling at an "unsafe speed." *Id.* His BAC registered as 167 mg/dL. *Id.* The court granted summary judgment in favor of the insurer, finding the plan administrator's conclusion that the accident, which occurred while the insured was driving at an "unsafe speed" on a clear day, resulted at least in part from his intoxication, was not arbitrary or capricious. *Id.* at *4-5. Thus, there was evidence before the plan administrator that the insured was driving too fast for the conditions.

The decedent in *Giacomini v. Standard Insurance Company*, No. 14-cv-533-wmc, 2015 WL 5440664 (W.D. Wis. Sept. 15, 2015), was insured under an AD&D policy excluding coverage if an accident was "caused or contributed to" by "voluntary use or consumption of any . . . drug . . . or legal intoxication while operating a motor vehicle." *Giacomini*, 2015 WL 5440664, at *1. While the policy was in effect, the insured died after falling from an ATV he was operating on a paved public road in clear, dry conditions. *Id.* at *2. After he fell to the pavement, the vehicle left the roadway and landed in a ditch. *Id.* The police report indicated that the insured was driving home from a neighborhood party at which he had been drinking alcohol and that five unopened cans of Lime-A-Rita were found scattered on the ground around the ATV. *Id.* His BAC was 187 mg/dL. *Id.* at *3. The coroner attributed the death to "speed and alcohol." *Id.* A physician hired by the insurer provided a memorandum in which he answered its question concerning how a BAC of .187 would affect one's ability to operate a vehicle by stating that such a person would have "significant gross motor impairment, lack of physical control, blurred vision, and major loss of balance." *Id.* After the insured's widow appealed the denial of benefits, arguing alternative causes of the accident, the insurer retained a second physician, who opined that "more likely than not alcohol impairment contributed to and/or directly caused" the death. *Id.* at *3-4. In light of the

police report and the physicians' opinions, the court granted summary judgment in favor of the insurer, finding its denial of the claim was not arbitrary or capricious. *Id.* at *9. Therefore, there was evidence in the record, from the coroner and second physician, that intoxication contributed to the death.

In *Dipper v. Union Labor Life Insurance Co.*, 400 F. Supp. 2d 604 (S.D.N.Y. 2005), the insured, who was with some friends, was injured while attempting to drive an overloaded ATV up a steep trail when it struck a bump or rock, causing the vehicle to stand on its rear and flip over backward. *Dipper*, 400 F. Supp. 2d at 606-07. A toxicology report indicated Dipper's BAC was .127. *Id.* at 607. The police report stated, "It was found upon investigation that all occupants were drinking alcohol and contributed to the accident." *Id.* at 608. The AD&D policy under which Dipper was covered excluded coverage for losses "caused by or resulting from . . . an injury that occurs because the insured was intoxicated." *Id.* The court determined on de novo review that the record, including the accident report, supported the claims examiner's finding that the harm was caused by Dipper's intoxication. *Id.* at 611. As in *Giacomini*, there was evidence before the insurer that alcohol contributed to the injury.

Here, there were no witnesses to the crash and no evidence whatever that Mr. Murchison committed a traffic violation. Nor is there evidence in this case of the type present in *Dipper* and *Giacomini* that alcohol and/or drugs contributed to his death.[4] The sheriff's report made no finding

---

[4]Defendant makes much of a statement by the Fifth Circuit in *Dutka ex rel. Estate of T.M. v. AIG Life Insurance Co.*, 573 F.3d 210 (5th Cir. 2009), that "there was no *direct* proof that the drugs caused the crash, however, in such a case there rarely is -- the evidence is circumstantial. The nature of the accident itself supports the conclusion that drugs contributed." *Dutka*, 573 F.3d at 214. In that case, the insured was piloting a private plane on a reconnaissance flight of deer hunting sites, which required low altitude flying. *Id.* at 212. He and his passengers were killed after he failed to maintain adequate air speed that resulted in a stall/spin from which, at low altitude, it was impossible to recover. *Id.* The insurer denied the claim under an exclusion for

that alcohol or drugs contributed to the loss.  The autopsy report and death certificate listed the cause of death as "blunt force injury of the neck."  When asked specifically to confirm whether alcohol or medication played a role in the accident, the sheriff's department investigator replied that he could not.  Rather, he attributed the wreck to a sink hole or dip on the creek bank, either of which could have rolled a sober driver.

Perhaps most stunning is the statement of Reliance's only expert, who opined, in response to the question whether it was reasonable to conclude that Mr. Murchison's consumption of drugs and/or alcohol was a contributing factor in the loss, that it was not.  In doing so, Dr. Matshes stated that alcohol and sedating drugs could have been "a risk factor for the circumstances that lead to the accident."  Although the Defendant attempts to conflate "risk factor" and "contributed to," Dr. Matshes did not treat them as the same thing.  He specifically found that, while the risk factor was present, he could not opine that it contributed to the loss, which is what the Exclusion requires.  In fact, he cautioned that it was "impossible" and "scientifically irresponsible" to use numerical toxicology data in isolation to determine whether alcohol or drugs contributed to the loss, pointing out that alcohol tolerance, of which there was evidence in the record in the form of Crawford's

---

losses caused by or resulting from the insured being under the influence of intoxicants or drugs, specifically, in that case, cocaine.  *Id.*

When the matter reached the Fifth Circuit, the court found as to causation, on an arbitrary and capricious review, that

> [i]n good visual meteorological conditions and with no evidence of mechanical failure, as the NTSB report found in this case, the failure to maintain airspeed at low altitude is a fundamental piloting error making it reasonable to conclude that the accident resulted in part from the pilot being under the influence of drugs.

*Id.* at 214.  While the Court does not disagree with the Fifth Circuit's determination on the facts before it, the decision has less than persuasive appeal here.  The facts before this Court, as explained herein, are not as clear-cut.

declaration and the autopsy report noting severe hepatic steatosis with early changes of cirrhosis, was a "significant factor that must be considered." He went on to advise that, in order to offer an opinion, he would need additional information concerning whether, and what, Mr. Murchison had recently eaten, as well as information relative to his habituation to both alcohol and narcotics. But Reliance did not request that Dr. Matshes obtain this additional information or assist him in doing so. Nor did it procure a different, and perhaps more favorable, opinion from another physician. Instead, it insisted that his opinion "bolstered" its conclusion the Exclusion applied.

Before this Court, Reliance attempts to distance itself from Dr. Matshes' report, arguing in its brief that he "provided an esoteric medical opinion on the cause of death 'from a forensic pathology perspective'" and "got hung up on the medical 'process of dying' whereas the policy only requires that alcohol or drugs be a 'contributing factor.'" (D.E. 25 at PageID 485.) It goes still further, proclaiming that "[a]t best, the responses of Dr. Matshes are irrelevant to the claim in this case." (*Id.* at PageID 486.) In the face of unequivocal advice from its only expert that it could not rely on the toxicology report alone without more information, Defendant did exactly that. Such action was unreasonable. *See Loan*, 370 F. App'x at 597 (where insurer's own doctor indicated that more analysis was necessary to determine whether decedent was legally intoxicated, it was unreasonable for insurer to rely solely on toxicology report).

Reliance maintains that it also relied on the generic effects of alcohol and drugs, as were alluded to in the sheriff's report, Reynolds' email, and the Virginia Tech study. This, however, is tantamount to an assertion that a BAC above a certain limit automatically demonstrates causation, which has been rejected by the courts. *See Horton*, 2015 WL 1469196, at *28-29; *see also Kovach v. Zurich Am. Ins. Co.*, 587 F.3d 323, 332 (6th Cir. 2009) (Physicians' Desk Reference statement

that opiate for which insured had a prescription "may impair" mental or physical abilities did not constitute proof that it did so for the insured).

Further, Defendant repeatedly contends that the incidents of September 10, 2017, provide "ample evidence confirming impairment of judgment and motor skills" and, thus, that alcohol and/or drugs contributed to the loss. (D.E. 24-2 at PageID 115.) However, this "evidence" consists of mere speculation on Reliance's part. There is no evidence in the record as to why or how the shooting occurred, other than that it was accidental. It is just as likely that the gun malfunctioned or that Mr. Murchison's view was obstructed by vegetation or a structure such that he was unable to see his friend until it was too late. As for his disappearance from the scene thereafter, Defendant suggests that Mr. Murchison rode away to avoid investigation for the shooting because he was severely impaired. But the record does not indicate that police were called to investigate the shooting. It reflects only that officers assisted in searching for Mr. Murchison after he failed to return home. Reliance also points to the fact that Mr. Murchison did not go with his friend to obtain medical assistance. As there is no information that the other friends at the scene left with the injured individual, it seems unremarkable that Mr. Murchison did not.

It is the opinion of the Court that Reliance's reasoning in making its determination falls short of what is required to survive arbitrary and capricious review. In doing so, the Court has reviewed decisions of other federal courts called upon to interpret intoxication exclusions requiring a causation showing and finds the following cases instructive. In *Ciberay v. L-3 Communications Corp. Master Life & Accidental Death & Dismemberment Insurance Plans,* No. 3:12-cv-1218-GPC-MDD, 2013 WL 2481539 (S.D. Cal. June 10, 2013), the insured fell down a flight of stairs while carrying a plate and drinking glasses. *Ciberay,* 2013 WL 2481539, at *2. At the hospital, his BAC was measured at .422 mg/dL and he was reported to drink vodka intermittently in addition

to two to three beers per day. *Id.* After he died a few days later, the medical examiner listed his manner of death as accidental and the cause of death as complications following pelvic fractures from the fall, with alcohol abuse, diabetes mellitus, obesity, and hypertensive cardiovascular disease as other significant conditions. *Id.* at *3.

The insurer's denial of benefits letter stated as follows:

The records we reviewed indicate that [the insured] died as a result of complications of a pelvic fracture with other significant conditions causing death listed to be hypertensive cardiovascular disease, alcohol abuse, obesity, and diabetes mellitus on February 16, 2010.

*          *          *

The medical records and fire department report indicate that [the insured] fell down some stairs and sustained a pelvis fracture as a result of a fall on February 7, 2010 and passed away on February 16, 2010. His blood alcohol level was determined to be 422 mg/dL, or .422% when tested at the hospital. He admitted to drinking heavily that day. A BAC level of .422% has the following typical effects: ataxia, tremors, disorientation disturbed equilibrium, and can even lead to unconsciousness, depressed respiration, and death.

*          *          *

Based on our review of the available records, we determined that [the insured's] death . . . was caused in whole or in part by, or resulting in whole or in part from, [the insured] being under the influence of intoxicants.

*Id.* at *4.

The insured's wife appealed the denial of benefits, arguing that, while her husband was intoxicated at the time of the fall, he did not die of intoxication. *Id.* On appeal, the insurer hired a forensic pathologist to review the claim file. *Id.* at *5. The pathologist opined that the manner of death was an accident and that he agreed complications of pelvic fractures from the fall were the direct cause of death, adding that the insured's very high BAC played a role in causing the fall. *Id.* at *5-6. The claim was again denied for the same reasons articulated in the initial denial letter. *Id.* at *6.

21

On arbitrary and capricious review, the federal court found that, in light of the medical examiner and pathologist's opinions that complications from the pelvic fractures caused his death, there was "simply insufficient evidence to reasonably conclude [the insured's] intoxication caused him to fall." *Id.* at *7, 13. This was true even though it could be argued, as the insurer did, that his intoxication "began the chain of events leading to his death." *Id.* at *13. The court went on to state that "[o]ther than a generic list of the typical effects associated with a blood alcohol level similar to that of [the insured's] at the time of his fall, . . . one may only speculate as to what actually caused [him] to fall." *Id.* at *14.

In *Giangreco v. United States Life Insurance Co.*, 168 F. Supp. 2d 417 (E.D. Pa. 2001), the insured was killed in a car accident. *Giangreco*, 168 F. Supp. 2d at 420. The wreck occurred when another driver swerved over one lane to the right, causing a vehicle in the lane next to the insured to yaw into the insured's lane. *Id.* After veering into the access lane, the insured's automobile struck a curb, catapulted into a telephone pole, and turned over, ejecting the insured. *Id.* At the time of his death, the insured was intoxicated and had been using marijuana. *Id.* at 421. The toxicologist reported that the combination of drugs in the insured's body was "sufficient to render him impaired in judgment, perception, alertness, coordination, response time, and the usual sense of care or caution at the time of the accident." *Id.* (internal quotation marks omitted).

The insurer denied a claim under an AD&D policy on the insured based on an intoxication exclusion for losses "caused directly, indirectly, wholly or partly by . . . being intoxicated or under the influence of any drug[.]" *Id.* at 420-21. In the federal action that followed, the court, on a motion for summary judgment, concluded that one could reasonably find on the record that the insured's intoxication did not cause the loss. *Id.* at 422-23.

In *Kellogg v. Metropolitan Life Insurance Co.*, 549 F.3d 818 (10th Cir. 2008), the insured died following an accident in which his vehicle left the road and struck a tree. *Kellogg*, 549 F.3d at 819-20. An eyewitness reported that it appeared the insured suffered a seizure immediately prior to the accident. *Id.* at 820. A toxicology report indicated that the insured had detectable levels of five prescription and/or over-the-counter drugs in his system, including hydrocodone and bupropion. *Id.* The final autopsy report listed the cause of death as subarachnoid hemorrhage and basilar skull fracture and noted that the decedent had a "post[]mortem blood bupropion level of 2.29 mg/L" and that the drug "has a reported risk factor of seizures." *Id.* at 820-21. A sheriff's department letter opined the insured died accidentally as a result of traumatic injuries suffered in the crash. *Id.* at 821-22.

An AD&D policy covering the insured excluded payment for a loss "caused or contributed to by . . . physical or mental illness[.]" *Id.* at 821. During the claims process, employees of the insurer obtained information from a website regarding the medications listed in the toxicology report. *Id.* at 822. There was no indication in the administrative record that medically trained personnel were involved in this search or reviewed the search results. *Id.* The insurer denied the claim under the illness exclusion, stating that the insured's physical malady -- the seizure -- caused the accident. *Id.* at 823.

The district court granted summary judgment in favor of the insurer. *Id.* at 825. On appeal, the Tenth Circuit recognized that "courts have long rejected attempts to preclude recovery on the basis that the accident would not have happened but for the insured's illness." *Id.* at 831. The appellate court, reversing the decision below, held that the loss was "caused by a skull fracture resulting from the car accident, not by physical or mental illness. While the seizure may have been the cause of the crash, it was not the cause of [the insured's] death." *Id.* (internal citation omitted).

23

In this case too there is simply insufficient evidence in the record tying intoxicating substances to Mr. Murchison's death.   In rendering its decision, Reliance selectively chose information that was favorable to it and relied on that information to support its denial, while completely ignoring other information, sometimes in the same document, which was unfavorable. Like the court in *Spangler*, the undersigned can only conclude that Defendant cherry-picked the record in search of an outcome in its favor.   *See Spangler*, 313 F.3d at 362; *see also Small v. First Reliance Standard Life Ins. Co.,* No. Civ.A. 02-3744, 2005 WL 486614, at *3-4 (E.D. Pa. Feb. 28, 2005) (court found plan administrator's denial of benefits arbitrary and capricious, noting procedural irregularities that included "selective use of information for self-serving reasons").   The Defendant's interpretation of events leading up to the accident is mere conjecture.

## CONCLUSION

Taking into account the conflict of interest of the Defendant, the Court concludes, therefore, that the administrative record cannot support a "reasoned explanation" for Reliance's decision and, thus, the determination was arbitrary and capricious.   *See Moon*, 405 F.3d at 379. As the Court has rejected the sole basis upon which Reliance grounded its denial of benefits, the Defendant's decision is REVERSED.   This matter is REFERRED to the magistrate judge for a report and recommendation with respect to the appropriate amount of the award (*see* D.E. 26-1 ¶ 2), as well as any other monies to be awarded, including interest and attorney's fees and costs.

IT IS SO ORDERED this 23rd day of April 2020.

s/ J. DANIEL BREEN
UNITED STATES DISTRICT JUDGE

24